Good morning. I want to thank counsel for accommodating our suggestion that we hold this in Philadelphia. I hope it didn't inconvenience counsel too much, but it was tough getting hotel rooms in in Newark, so we made the switch. All right, we have one case to hear this morning, Craig Kalinoski v. Lackawana County et al. Good morning, your honors. My name is Deborah Simon and I represent appellants, Commissioner Lackawanna County Commissioner Cory O'Brien and now Thank you. Should the court consider this appeal? This court in Stevens v. Delaware County interpreted the holding in Mitchell v. Forsyth as allowing courts of appeal to review an order denying summary judgment on immunity grounds when the question to be decided is a purely legal one. In Stevens, the merely because the district court identifies issues of fact and held that it has jurisdiction to review the denial of an immunity defense at the summary judgment stage under the collateral order rule to the extent that the denial turns on questions of law. Mitchell identifies two principles that the immunity defense serves. Counsel, here we do have issue of law, don't we? I mean facts are pretty clear in the record and the record is pretty clear as to what it is. Yes, I would agree with that. So I'm wondering whether you should reserve for rebuttal the discussion of this issue to see if your opposing counsel really comes up with something that would give us pause. I'm a little more interested in the procedural aspect of the legislative immunity and since you only have 10 minutes now. That's perfectly appropriate, thank you, Your Honor. This case arises from changes in the government structure and personnel that occurred after an election in which the voters overwhelmingly rejected the leadership of incumbents. Two other courts have looked at the changes at issue here and how they affected the structure of Lackawanna County's Office of Public Defender. Although we really don't have much reasoning from those other two cases and I'm not sure what's really in the record to show that the procedures that are to be followed under the Home Rule Charter were followed here. Where in the record is there evidence regarding the procedures that were followed? And I guess I really refer to what I see as the Home Rule Charter's requirements that there's, they obtain salary board approval for changing his salary to zero, published a summary of the budget that eliminated his position in a newspaper, held hearings on the budget, and adopted the budget at a different meeting than the one at which it was introduced. To my mind, those things are required, but I'm wondering where in the record, as Judge Caputo said, you showed those? Well, our position is that not only do the matters relating to a vote encompass within legislative immunity, but matters that are preparatory to the introduction and passage of legislation are encompassed within legislative immunity. Well, then what does the procedure, what is the procedurally, I mean substantively and then proceed, what does the procedurally mean you have to show? Well, one of the procedures at issue here is the appointment of a transition team. The charter specifically allows for that in the provision that as part of, in aid of its legislative function, allows the elected officials to appoint, to conduct an investigation, or to solicit the assistance of consultants, which is what they did here. The consultants, the transition team, which was formulated with attorneys, including the former chief public defender, conducted an investigation, consulted with jurists in the local courts. Where is that? Judge Rendell listed several things that are in the home rule, home rule procedures. You're talking about something a little different. Could you cite what you've got? I have the law in front of us, I know that you can, I mean it's more general reorganization. That would be in 1.302, Powers and Duties, under subsection G, in aid of its legislative powers and functions, to make or cause to be made as a body, or through a committee thereof, such studies, audits, inquiries, and investigations relating to the affairs of the county. And then if you go down a little further, and in connection therewith, to obtain professional and technical advice. It's our contention that it is perfectly appropriate, in aid of legislative powers, to have experts provide recommendations that will assist in the formulation of But what we are concerned with is the legislative activity that resulted in the elimination of his position, or the restructure, or whatever. And so the focus really shifts from before to, okay what was happening January 28th, January 30th? Did they get salary board approval? Was his position eliminated versus was he the focus shifts? Now I have a question. If the budget was approved on the 30th, and yet he was fired on the 28th, doesn't that present a problem in terms of whether he was let go pursuant to a budgetary legislative action? That would be correct if the budget weren't formulated in advance of that, which I the 13th, the restructuring of the office was in a concrete form. Where was that shown? That would be in this hiring chart that's referred to. The hiring chart interestingly shows that other positions were eliminated, but when it gets to Kalanoski, it doesn't say that. Position eliminated, position eliminated, and yet when it gets to his, you have another name above his and his name. It doesn't say position eliminated. I'm looking at appendix 610. So how does that chart show us that the budget that was being proposed eliminates his position versus, you know, he's being fired? Well if you go back to the recommendations of the are the number of full-time positions, the number of part-time positions that they recommended to change the structure from what they had before, which was part-timers who, pursuant to complaints from the court, were never available to be found. The recommendation was to make the chief's position full-time, which it had not been in the past, and then the budget that was proposed allowed for But isn't what Judge Rendell points out, isn't there a temporal problem here? You're saying it was almost done, but it was already executed before, sort of that last step, which might be a rubber stamp, I don't know, but nonetheless the budget wasn't approved until after. Isn't that a problem? I don't think it's a problem because we're not here seeking legislative immunity as to any decision specific to Mr. Kalinowski. We're here seeking legislative immunity that allows my clients to restructure the office to propose a new budget that changes the structure of the office in terms of how the funding is allocated. The hiring chart shows the funding and its allocations and that structure was that show the breakdown of how the salaries were to be allocated. The hiring chart and the final budget all have the same numbers. What we are seeking legislative immunity for is that process, the recommendations, the adoption of those recommendations which are put into the hiring chart and the adoption of the final budget is a legislative act. That is what we're talking about. Well, the district court said that you didn't specify a specific statutory procedure in denying summary judgment. So apart from the home loan charter, is there such a procedure that exists? Well, the charter recognizes the authority to restructure departments. It does not say how that authority is to be exercised. In this case it was exercised by proposing a structure and putting the structure in a budget and approving the budget which embodies the structure. The district court did not look to the part of the charter that deals with the budget itself and how the budget is to be specified. Each position in a department and that is how the budget is constructed and then voted on and approved. Do you agree that there are some procedures required under the home rule charter as to which we have no evidence in the record? Such as getting salary board approval for changing the salary, publishing a summary of the budget in a newspaper, holding hearings on the budget, and adopting the budget at a meeting different from the one in which it was introduced. Is there any evidence of that? This is a somewhat of a hybrid procedure in that there was a budget that was approved by the previous commissioners because under the home rule charter that's all supposed to be done in December. When there's an election, there is the opportunity to amend the budget and with a new incoming commissioners to budgetary priorities. That has to be done by February 1 according to the charter. If it is not done by then, then the previous budget takes effect. But did you hear my question as to those specific things? Are you agreeing that they needed to be done and is there any evidence in the records that they were done? I don't agree that they need salary board approval. They only need it to establish salaries and wages under the charter. If it is a new salary or a new position, once the money is in the budget, the commissioners have the discretion to reorganize as the as the charter recognizes the department. Maybe that's what Judge Caputo needed to understand better what the procedures were. Well we'll hear from you on rebuttal. May it please the court, I'm Pete Weinbreg and I represent Plaintiff Appellee Craig Kalinowski in this case. What we have going on in this case is there was an executive administrative decision made by Mr. Washoe and O'Brien to terminate Mr. Kalinowski's county employment and to replace him with Joe McGraw. That decision is reflected in a document that Judge Rendell mentioned, this hiring chart, which is attached to an email which is dated January 13th, 17 days before the budget was ever passed. During the district court summary judgment proceedings, there was virtually no argument and no facts about this being part of the budget process or being related to some home rule mandated transition team process. Was there any evidence about the need to restructure or reorganize the Office of the Public Defender and the need to make budgetary decisions with respect to that program? There was, Your Honor, but the evidence was presented in the context of trying to show that there was a non-discriminatory intent, not in the context of legislative immunity. So then what the evidence showed, Your Honor, was that the transition team on December 13th, that's before Mr. O'Brien was even an elected official. He wouldn't be sworn in until January 7th. Was the work of the elimination of Mr. Kalinowski's position? Yes, it was, and the context was there's an email which is part of the record that on December 13th, the transition team recommended a reorganization of the office. Now that reorganization of the office, Your Honor, was budget neutral, okay? The evidence is that Commissioner-Elect O'Brien and Commissioner Washoe immediately accepted that recommendation. And so the transition team's recommendation was to restructure the office in mid-December, accepted by defendants, and now defendants go forward with the administrative and executive task of deciding which people are going to go into those various jobs that were part of the accepted restructuring. Why doesn't, you know, I was looking at these cases, Baraka versus McGreevy and Almonte versus Long Beach, and it seems like this idea of legislative immunity is so broad, it includes so many things. Why isn't, why isn't this, doesn't this case fall within the holdings of these cases? It doesn't, Your Honor, because in both of those cases, the act, the decision that was being challenged was the actual legislative act. In Baraka, it was the state legislation that eliminated the poet laureate position. Up until that legislation passed. Why wasn't the elimination of Kalinowski's position a legislative act in this case? That came at the end of that study process. Because the study process, Your Honor, didn't have anything to do with whether Mr. Kalinowski was going to retain a job in the restructured agency. As a matter of fact, the testimony is very clear that the transition team, although it made a restructuring recommendation in mid-December, which was any recommendation that particular people should be fired or retained. And so the decision, the decision to turn... But it did, didn't it, when it came up with the hiring chart that showed that McGraw would be in and Kalinowski would be out? The hiring chart was created by Corey O'Brien. That was not created by the transition team, Your Honor. Okay, all right. The evidence is very clear. In fact, Mr. Karam, the chairperson of the transition team, testified under oath at his deposition that they didn't recommend who should or should not get positions within the restructured agency. Your point is that he was specifically targeted because he was a Republican who had not supported the plaintiffs in the case. It is, Your Honor. And the other claim is that... What I wanted to ask you is about the Supreme Court case. I think it's a Bogan case, which is don't look at the motive. You know, look at the nature of the act. Don't look at why somebody is not hired or rehired. So what's your response to that? Bogan, again, was similar to the Poet Laureate case in that the actual act, the act of eliminating the position, was a legislative act passed by the legislature up until the moment of that legislative act. Yeah, but I'm sorry. My point is that you're asking us to look at why Kalinowski was not rehired. And your point is that he wasn't rehired because he didn't support...he's a Republican who didn't support the incoming commissioners. That's what you want us to do. But Bogan says that's not the right focus. The focus should be on what the legislatures did, the nature of the act, not the motive behind it. Well, the motive behind the act, Your Honor, and maybe I misunderstood the claim, is relevant to the substantive First Amendment claim. Very relevant. It's the essence of the claim. As for what we're here for today, legislative immunity, plaintiff certainly agrees with Your Honor that motive is irrelevant. My point, Your Honor, is that Bogan is distinguishable not because of motive. Bogan is distinguishable because the challenged act was itself a legislative act of, through proper legislative procedures, eliminating the position. Up until the elimination of that position through legislative procedures, Mr. Bogan had a job, just as Mr. Beccara, the poet laureate, had a job. Well, here, Mr. Kalinowski had a job until they adopted the recommendations of the transition team and restructured. Right. Exactly why is this not, why does not what happened here satisfy procedural legislative immunity? Because the decision to terminate Mr. Kalinowski was made before there was any legislation. Mr. Kalinowski received his termination letter on January 28th. What do you mean by legislation, though? The legislation in this case, Your Honor, the only legislation in this case is the January 30th passage of the county budget. That's, there's no other legislative act. Why does it have to be legislation? What Judge Caputo said, and I think he's right, I mean, was there a procedure in place under which Kalinowski was not rehired? There was no, there was no, there was no formal or legislatively recognized procedure. It was an executive procedure made by county commissioners who were making an executive decision to fire someone. What about state? But they were restructuring, weren't they? This is happening in the context of a restructured department. But nonetheless, even within the context of that restructured government, some people kept their jobs. Some people lost their jobs. But that's what happens when you restructure. Some people keep them, some people don't. I, I, I agree with Your Honor that that's what happened. You're arguing just that the, the restructuring generally was legislative, but once it came to putting people in the newly restructured positions, that was executive or administrative? No, even the restructuring, Your Honor, was not legislative. The, the, the, the decision to restructure the, the public defender's office was made in December. Corey O'Brien was not even a governmental official at that time. There's no, there's, there's no, no, no, no provision that says that when politicians are elected to office and they form a transition team, that that transition team somehow takes on this formal legislative, of, of, of, of, of hallmarks of legislation. This is a transition team. So a transition, a transition team cannot be deemed to be, to exercise legislative powers? I guess it could if there was some law or county charter that actually that, that actually said upon being elected to office, but before taking office. Well, if we agree with you, that's the end of the case, I, I suppose, because that, that's the basis for the Kalinowski not being hired. The study of the transition team. It's not, I, I, I would respectfully disagree with Your Honor. The basis for the restructuring of the department was the transition team recommendation. But beyond that, with respect to all the personnel decisions that were made within the context of that restructured agency, those were purely executive decisions made by defendants O'Brien and Washoe. How do we cut, how do we draw that line? I mean, January 7th, they become the commissioners. So they are acting, you know, in arguably a legislative capacity. But how do you say, okay, the restructure plan is a legislative activity, but when you go down into the weeds and decide who, who stays and who doesn't, how do you say that the person is, is let go in a manner that's not pursuant to the restructure plan? I, I, I would just. How do, how would we write that opinion to draw that line? I, I don't think that the court has to draw the line because there's no, as Judge Caputo observes, there's no, there's no established legislative procedures that underlie the restructuring. Well, I, I did quiz Ms. Simon about the things that, you know, ought to be, ought to have been done. Are you arguing that these things that I mentioned before needed to be done or, or were they because of some amendment or the things she was talking about? Were they really unnecessary? The salary board approval and. All those things needed to be done, Your Honor. None of those things were done. The decision to, there, there was no formality to the decision to terminate Mr. Kalinowski. It was made in a room with appellate, appellants Washoe and O'Brien. There, a gentleman named Larry Moran, who didn't have a position in county government and was their political advisor, and a lawyer named John O'Brien, who was a campaign contributor. In that room, at that time, they made the decision to terminate Mr. Kalinowski. Mr. O'Brien's contemporaneous notes show that during that meeting, people's political pedigrees were openly discussed. That's when the decision was made. But, you know, in those meetings behind closed doors, that's, I mean, that's very often how these political decisions are, I mean, we may not like them. Or we may, but that's very often how the business of a legislature is conducted. Well, it is, Your Honor, but when, when that decision-making is, is taking place with respect to non-policy-making officials, such as an, such as an assistant public defender, if the decision-maker is motivated by a political discrimination, then it's, then it violates the First Amendment. And look, Judge Becker, I know, in one of the decision rights, a very elegant dissenting opinion, saying, hey, is that really such a good idea? But that is, in fact, the law. So, and, and I don't, and I don't, I don't tell the court about that meeting because motives are important. I agree with Your Honor that motives aren't important for legislative immunity. Not at this stage. Not at this stage. Certainly it's important with respect to the overall, when we go to trial, it's very important. The reason I tell the court about that meeting is because I think it demonstrates how informal and non-legislative and non-procedural this process was. All right, well, you know, Judge, Judge Randell reeled off some procedural requirements. Are there others? Let's get our arms around it. Are there other things that they should have done that we've not touched on here? Not that I know of. Frankly, Your Honor, they're, they're really. Because we, we, we're, we have to look at what procedures are out there and whether they were met. Do we have the, all the correct procedures? There really aren't. I, I mean, I, I think that the whole world started to the extent. That's a good point, though. I mean, besides 355, what, what would you go back and show Judge Caputo to satisfy him that there's. There's nothing. And, and, and that's why, that's why. Well, what should they have shown to satisfy him? He says I'm not satisfied, you didn't show me. What should they have shown him? There's not, Your Honor, respectfully, there's nothing to show him. It's a, it's a, it's a. I mean, it's a matter of law. It's an executive decision. That was made by county commissioners in an executive capacity. But then you could never have a restructuring of government following a study, a budgetary study, because there's no procedure to let somebody go. It's not, I, I, I would, I would, I don't know that that's the case, Your Honor. I think that you could have, first of all, the restructuring of the government isn't being what's, isn't what's challenged here. The termination is what's being challenged. And, and so I, I, I think that under the whole rule charter. He is terminated pursuant to procedures that satisfy the legislative immunity. It doesn't matter that he was terminated. But he, he, they have legislative immunity. And, you know, they, these people have to decide at some point, they have to get in a room. I mean, that's the way legislators operate. They sit there and they come up, they, they do it. But if it's pursuant to a restructure, whether you like it or not. And it's, it's the procedures are followed. Then it suddenly has a legislative rather than executive character to it. I, I would respectfully disagree with that, Your Honor. And in that regard, I would, I would just refer the court to the Carver decision. In, in this court's Carver decision the allegedly politically discriminatory personnel decisions took place in the context of a restructured government. And nonetheless, what the court explains is, is even though the, even though the executive decisions are taking place within that context. That doesn't make them legislative. They're still executive decisions. They're just happening in the context of a restructured government. I can tell the court, based upon having litigated many First Amendment retaliation cases, that only the dumbest public official doesn't try to restructure job titles, etc., before making the termination. When the, when the court looks at the, the, the, the, the First Amendment, the, the, the, the Bronte First Amendment political discrimination jurisprudence. What the court will frequently find is that before making a termination decision, there's restructuring, because what, what incoming politicians want to do, is they want to try to make these things look like they're part of a restructuring. It happens in almost every case. Are these decisions generally, though, done, I mean, this was done before the budget was passed. Are they generally done before the budgets are passed, or, or, or the like, I guess? I, I don't think they are. I mean, look, if, if I were the lawyer for O'Brien and Washoe, and I, and certainly Ms. Simon wasn't at that time, I would have been advising them, at least don't terminate him until after the budget passes. But they didn't do that. I mean, it was really kind of reckless what they did. Not only did they give him his termination letters two days before they even voted on the budget, they, they, they told the incoming public defender a week before that, that Mr. Kalinowski was going to be terminated. Was your primary beef that he was of a different party, or that he didn't support the incoming administration? It's, it's it's, it, it tends to be more, Your Honor, that he didn't support the incoming administration. Although there's an alternative theory that he was replaced to make room for a politically favored job candidate who is Mr. McGraw, who's the gentleman that appears on the chart that, that, that Judge Rendell referred to. Your time's up, but I just want to ask, was the fact that the position eliminated, or eliminated position is stated in some parts of the hiring chart, but not in connection with Mr. Kalinowski, is that, was that probed at all in deposition? As to why? I don't believe it was, Your Honor. Okay.  No? All right. Thank you very much. Thank you. Your Honors, I would like to address one comment that my opponent made, which was that the process was budget neutral. It was not budget neutral. In fact, the record showed that there was extensive concern with the budget because when my clients were elected and they consulted with the budget director and the head of finance for the county in preparation for taking office, they learned that there was an $8 million budget deficit. So one of the directives to the various individuals they were consulting in order to prepare for what was needed to take office was to cut the budget. But the budget increased. The budget was $177,000 more for the defender's office. That's correct because they, when they restructured, they eliminated a position of chief conflict counsel, which was also involved in indigent representation. So the transition team looked at the entirety of the issue of how representation to indigents was being provided by the county and all of the positions that were involved in that, including the office of conflict counsel, which it would take over a representation if there were multiple defendants or the office of public defender had some other reason for a conflict. So they were able to take salaries from another area and move it so that they could increase the budget of the public defender's office. Why was Kalinowski let go? Why was he let go? I don't think that's the issue for this court today. Well, I'm just saying, I'm looking at the hiring chart and it looks like he was switched out for another, it doesn't show that his position was eliminated. It shows that another person was put in his position. And I'm just wondering why from a restructure standpoint, why was that an integral part of the restructure? The testimony in the record is not that those entries in the hiring chart are one for one. It's simply a device that Mr. O'Brien used to track the salaries. And you'll see it at one point, it indicates the Cordero and Munchak, that was the previous administration's salary for a position and the salary that was being allocated in their administration because of the budget deficit. It was a device to track where the dollars were coming from to support the position. If we agree with Judge Caputo, I'm sorry, did you finish? I'm finished. If we agree with Judge Caputo, you got to show a procedure. Is there a procedure that you could go back and show Judge Caputo, this is the procedure that is in place and we can follow it? I think the procedure is what's contained in the charter. Was there anything beyond the charter? And the two other courts that have looked at the issue on these precise facts, including, and this is not cited in our brief, but subsequent to our brief. The charter is very broad. Is there anything beyond the charter? Well, if the charter had to approximate every possibility of a legislative act. All right, so it's just the charter. Let me back up and go back to the question I asked first. Was there salary board approval for changing Kalinowski's salary to zero? Yes or no? No, but his salary wasn't changed to zero. The salary was, as the hiring chart shows, allocated to a position that remained in the Office of Public Defender. Was a summary of the budget that eliminated his position published in a newspaper? Yes or no?  Well, I'm just saying that the charter is, were there hearings held on the budget? There was a meeting and I believe the agenda is in the record. But I don't know if there's a reference to what hearings were held. There were hearings held on the budget that was in place when my clients took office. Well, then maybe you needed to tell Judge Caputo how this is different, but he didn't have any procedures. Was the budget adopted at a meeting different from the one at which it was introduced? The budget had already been introduced. It was being amended at the time that this was done. I didn't see that in the record. I saw no, the word amend did not appear. And this is what, I mean, it surprised me that you didn't go back and say to Judge Caputo, well, can we enlarge the record and show why the procedures, you know, were necessary or were not, but it's just not in the record. I'm going to cite a case. Do you want to tell us what that case is? Yes, Bell v. Lackawanna County, which was the case with which this case was. That Judge Connor? Yes, and that was on August 31st, 2012. That case was decided and dealt with a former co-plaintiff of Mr. Kalinowski, who was also an assistant public defender, Kenneth Kovalevsky, in which the court found that the defendants were entitled to legislative immunity. Well, there seems to be a disagreement between Judge Caputo and Judge Connor, both of whom are able Middle District of Pennsylvania judges to what's required for procedural immunity. So we've just got to decide who's right. I would say not because Judge Caputo would not consider the evidence that we put in that the matter did go to a vote. On reconsideration, he refused to consider that evidence, which was before Judge Connor. Is that in the record? That's in his opinion. But what appendix page would show us that it did go to a vote? That would be the ordinance that we provided to the court and the agenda that shows that it was on the agenda for that day, which was, I believe, the 30th of January. All right. Thank you very much, counsel. We'll take the matter under advice.